WEITZMAN LAW OFFICES, LLC
Kenneth S. Weitzman (Bar No. 021451992)
425 Eagle Rock Avenue, Suite 102
Roseland, New Jersey 07068
Tel.: (973) 403-9940
Fax: (973)-403-9944

Michael J. Brown (Bar No. 049391994)
Of Counsel
WEITZMAN LAW OFFICES, LLC
425 Eagle Rock Avenue, Suite 102
Roseland, New Jersey 07068
Tel.: (973) 403-9940
Fax: (973)-403-9944

*Attorneys for Plaintiffs Geneva Laboratories Limited
and Union-Swiss (Proprietary) Limited*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENEVA LABORATORIES LIMITED, a Foreign Corporation; and UNION-SWISS (PROPRIETARY) LIMITED, a Foreign Corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> IOGGIO CO, a New Jersey Corporation; SERGEI MARTIROSOV; XYZ COMPANIES 1-5; and JOHN DOES 1-5, <br><br> *Defendants*. | DOCUMENT FILED ELECTRONICALLY <br><br> Civil Action No. _____ <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Geneva Laboratories Limited ("Geneva Labs") and Union-Swiss (Proprietary)

Limited ("Union Swiss") (collectively referred to as "Plaintiffs") for their Complaint against the

Defendants, iOggio Co ("iOggio"), Sergei Martirosov ("Martirosov"), XYZ Companies 1-5 and

John Does 1-5 (collectively referred to as "Defendants"), allege as follows:

## NATURE OF THIS ACTION

1.      Plaintiffs bring this civil action against Defendants to stop the willful and deliberate counterfeiting and infringement, and related unfair competition arising from Defendants' importation, sale, offers for sale, distribution, promotion and advertisement of skincare products bearing counterfeits and infringements of Geneva Labs' federally registered trademarks.

2.      Plaintiffs are seeking injunctive relief, damages, costs, attorneys' fees, and other appropriate relief arising from Defendants' willful and intentional acts of trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, unfair competition, unjust enrichment, and tortious conspiracy, in violation of the laws of the United States and the statutory and common law of the State of New Jersey.

## THE PARTIES

3.      Plaintiff Geneva Labs is a foreign corporation incorporated and registered in the British Virgin Islands, having a registered office at Palm Grove House, Box 438, Road Town, Tortola, British Virgin Islands.

4.      Plaintiff Union Swiss is a foreign corporation incorporated and registered in South Africa, having a registered office at 9th Floor, Park On Long, 66 Long Street, Cape Town, Republic of South Africa.

5.      Upon information and belief, Defendant iOggio is a New Jersey corporation, having a principal place of business at 2160 Center Avenue, Apt. 3M, Fort Lee, New Jersey 07024. Furthermore, upon information and belief, Defendant iOggio owns and/or operates the website www.ioggioco.com.

6.      Upon information and belief, Defendant Martirosov is an individual who is a resident of the State of New Jersey residing at 2160 Center Avenue, Apt. 3M, Fort Lee, New Jersey

07024.  Furthermore, upon information and belief, Defendant Martirosov is an owner and/or shareholder and a Director of Defendant iOggio, who exercises control over and is the moving, active, conscious force directing Defendant iOggio's wrongful acts, and is personally responsible and liable for the wrongful acts of Defendant iOggio, as described herein.

7.     Upon information and belief, Defendants iOggio and Martirosov are engaged in the alleged unlawful acts in conjunction with various entities and individuals, denoted herein as XYZ Companies 1-5 and John Does 1-5, whose identities are not presently known.  If the identities of these parties become known, Plaintiffs will amend the Complaint to include the names of such entities and/or individuals.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over Plaintiffs' federal trademark counterfeiting and infringement, false designation of origin, and trademark dilution claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (Federal Question), and 1338(a) and (b) (Trademark and Unfair Competition jurisdiction).

9.     This Court has subject matter jurisdiction of Plaintiffs' claims that arise under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367(a) and principles of supplemental jurisdiction.  The state law claims are so related to, and intertwined with, Plaintiffs' federal trademark counterfeiting and infringement claims (and other federal claims) as to be part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over the Defendant iOggio because it maintains a principal place of business within this District, is incorporated within this District, regularly conducts business within this District, and has committed the acts complained of in this District.

11.     This Court has personal jurisdiction over Defendant Martirosov because he resides within this District, regularly does business within this District, and has committed the acts complained of in this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

## THE WORLD FAMOUS BIO-OIL® FAMILY OF TRADEMARKS AND PRODUCTS

13.     Geneva Labs has the sole and exclusive right to manufacture, market, use, sell and otherwise commercialize skincare products under the brand BIO-OIL®.  Geneva Labs licenses Union Swiss to manufacture and distribute internationally skincare oil under the brand BIO-OIL®.

14.     BIO-OIL® skincare oil is the world's leading scar and stretch mark skincare product.  The BIO-OIL® skincare oil formulation was created by Dieter Beier, a German chemist residing in South Africa, to help improve the appearance of scars, stretch marks and uneven skin tone.  BIO-OIL® skincare oil is also highly effective for aging and dry skin.

15.     Launched originally in South Africa in 1987, BIO-OIL® skincare oil is now sold in 125 countries and has become the No. 1 selling scar and stretch mark skincare product in approximately 24 countries since its global rollout began in 2002.  BIO-OIL® skincare oil is used by millions of customers worldwide, including numerous celebrities such as Kate Middleton, Kim Kardashian West and Khloé Kardashian.  BIO-OIL® skincare oil is also highly recommended by doctors, pharmacists and midwives around the globe for treating scars and stretch marks.

16.     With approximately 2 million units sold annually in the United States alone, BIO-OIL® skincare oil has been the No. 1 selling skincare oil sold in the United States since 2009 and is currently sold in over 50,000 stores throughout the United States, including Amazon.com®, Walmart®, Walgreens®, Target®, CVS®, BJ's Wholesale Club®, Ulta Beauty®, Kroger®, Sam's

Club® and Rite Aid®. It is reported that over the past decade, BIO-OIL® skincare oil is the No. 1 selling skincare product and third best-selling product overall on Amazon.com® (https://www.cosmopolitan.com/uk/beauty-hair/a13701544/best-selling-skincare-product-amazon/).

17.   BIO-OIL® skincare oil has been widely featured in the media, including, among many others, the following magazines and publications: Good Housekeeping®, Allure®, Byrdie®, Cosmopolitan®, InStyle®, NewBeauty®, People®, Self®, Shape®, Teen Vogue®, Woman's Day®, Women's Health®, and Us Weekly®.

18.   BIO-OIL® skincare oil has won hundreds of skincare awards around the globe, including the following awards in the United States: Good Housekeeping Seal of Approval (2018), Woman's Day Beauty Great Value Award (2017), Problem Solver Multitasking Oil at New Beauty's Beauty Choice Awards (2017), Best Budget Scar Removal Oil by Faveables.com (2017), Drugstore Diamond at Teen Vogue's Beauty Game Changers Awards (2016), Your Stretch Mark Savior at New Beauty's Beauty Choice Awards (2016), Gold Winner at the National Parenting Publications Awards (2015), Best Multipurpose Oil at New Beauty's Beauty Choice Awards (2014), Gold Award at the Mom's Choice Awards (2014), Silver Winner at the National Parenting Publications Awards (2014), Editor's Choice Award at Sheknows.com Parenting Awards (2012), and Best Scar & Spot Treatment by Shecky's Beauty at its Best Awards (2007-2009).

19.   Geneva Labs is the owner of the following federal trademark registrations (hereinafter collectively referred to as the "BIO-OIL® Trademarks") issued by the United States Patent and Trademark Office:

| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
|  | 3029619 | Dec. 13, 2005 | Essential oils for personal use, cosmetics |
| BIO-OIL | 4454698 | Dec. 24, 2013 | Cosmetics; Essential oils for personal use |
|  | 5387975 | Jan. 23, 2018 | Cosmetics; Essential oils for personal use |

Copies of the United States trademark registrations for the above BIO-OIL® Trademarks are attached as **Exhibit 1**.

20.     Geneva Labs' registrations for the BIO-OIL® Trademarks are valid, subsisting and owned by Geneva Labs, and constitute *prima facie* evidence of Geneva Labs' exclusive nationwide rights in the registered BIO-OIL® Trademarks as of their respective filing dates in accordance with 15 U.S.C. §§ 1057(c), 1115(a).

21.     Moreover, the BIO-OIL® (and Des.) registration (Reg. No. 3029619) has attained incontestable status in accordance with 15 U.S.C. § 1065, and constitutes conclusive evidence of the validity and registration of the BIO-OIL® (and Des.) mark, Geneva Lab's ownership of the BIO-OIL® (and Des.) mark, and its exclusive right to use the BIO-OIL® (and Des.) mark throughout the United States in connection with cosmetics as of the application's August 2, 2001 filing date in accordance with 15 U.S.C. § 1115(b).

22.     By virtue of its use of the BIO-OIL® Trademarks in the United States since at least as early as the year 2003, the BIO-OIL® Trademarks have become nationally recognized and distinctive in the marketplace, serving to distinguish the Plaintiffs' skincare products from those emanating from other sources.

23.    The BIO-OIL® Trademarks are associated with Plaintiffs in the minds of consumers, the public and the trade.

24.    The BIO-OIL® Trademarks identify high quality products originating with Plaintiffs.

25.    As a result of the wide renown acquired by the BIO-OIL® Trademarks by virtue of the widespread sales of BIO-OIL® skincare oil used by millions of customers worldwide and the high acclaim attributed to the BIO-OIL® skincare oil, the BIO-OIL® Trademarks have become famous in the mind of the purchasing public within the meaning of 15 U.S.C. § 1125(c), and exclusively identify the skincare products offered under the BIO-OIL® Trademarks with a single source.  The BIO-OIL® Trademarks, and the goodwill associated therewith, are of inestimable value to Plaintiffs.

26.    Geneva Labs is also the owner of extensive common law trademark rights under Federal and New Jersey statutory law, as well as under the common law, by virtue of its continuous use in the United States, through its licensee Union Swiss, of the BIO-OIL® Trademarks since at least the year 2003.

### DEFENDANTS' COUNTERFEITING & INFRINGING ACTIVITIES

27.    Defendants' course of illegal conduct includes the importation, distribution, advertising, offering for sale, and sale of counterfeit BIO-OIL® skincare oil (the "Counterfeit Goods") bearing the BIO-OIL® Trademarks, without authorization or license from Plaintiffs, that Defendants falsely represent are genuine.

28.    Defendants have offered for sale and sold the Counterfeit Goods, without Plaintiffs' consent or permission, at least through Defendants' account on Amazon.com® and, based upon information and belief, through Defendants' account on eBay.com.

29.     On or about October 5, 2017, Plaintiffs purchased one of the Counterfeit Goods sold by Defendant iOggio on Amazon.com® under the account "ioggio co."  The purchased Counterfeit Goods were shipped to Plaintiffs in a box bearing the return address as "ioggioco.com, 2160 Center Ave #3M, Fort Lee, NJ 07024," the same address as both Defendants iOggio and Martirosov.  Although prominently bearing the BIO-OIL® Trademarks, the packaging for the purchased Counterfeit Goods included subtle differences from Plaintiffs' authentic packaging.  A laboratory test of the purchased Counterfeit Goods commissioned by Plaintiffs demonstrated that the purchased sample was not a genuine BIO-OIL® skincare oil.  Copies of the product packaging of the Counterfeit Goods purchased from Defendant iOggio, its shipping box, printouts of the Amazon.com® product and order detail pages for that purchase, and the laboratory test results are attached as **Exhibit 2**.

30.     On November 10, 2017, Amazon.com®, in response to a complaint reported by Plaintiffs, removed Defendant iOggio's Counterfeit Goods (ASIN: B075DCXPWM; Title: Bio-Oil® is a specialist skincare 60 ml.) from being listed on Amazon.com®.  Following the initial takedown by Amazon.com®, Defendants iOggio and Martirosov continued to list additional Counterfeit Goods for sale on their Amazon.com® account, which were subsequently removed by Amazon.com®.

31.     On November 16, 2017 and November 20, 2017, respectively, Plaintiffs' attorneys wrote to Defendant iOggio that its sale and distribution of the Counterfeit Goods infringed on Geneva Labs' BIO-OIL® Trademarks and demanding that Defendant iOggio immediately cease and desist from all sales, manufacture and importation of the Counterfeit Goods.  While there was brief communication between the respective counsel for Plaintiffs and Defendant iOggio,

Defendant iOggio refused to fully comply with the demands set forth in Plaintiffs' cease and desist letters.

32.     On or about February 26, 2018, United States Customs and Border Protection ("U.S. Customs") notified Plaintiffs' counsel that it had seized Counterfeit Goods bearing one or more of the BIO-OIL® Trademarks imported from Hong Kong by Defendants Ioggio and Martirosov at JFK Airport on January 15, 2018.  A copy of the U.S. Customs notice is attached as **Exhibit 3**.

33.     While bearing the BIO-OIL® Trademarks, the packaging for the seized Counterfeit Goods had subtle differences from Plaintiffs' packaging used for distribution of BIO-OIL® skincare oil in the United States.   While it is unlikely that consumers would recognize the differences, the packaging for the seized Counterfeit Goods did not comply with various labeling regulations published by the United States Food and Drug Administration ("FDA").

34.     A laboratory test of a sample of the seized Counterfeit Goods provided to Plaintiffs by U.S. Customs demonstrated that the sample of the seized Counterfeit Goods was not a genuine BIO-OIL® skincare oil.  Copies of the sample of the seized Counterfeit Goods in the U.S. Customs evidence bag, its product packaging and insert, and the laboratory test results are attached as **Exhibit 4**.

35.     The Counterfeit Goods imported, sold and distributed by Defendants are not genuine BIO-OIL® skincare oil and are of inferior quality.

36.     The packaging for the Counterfeit Goods imported, sold and distributed by Defendants does not comply with the FDA's labeling regulations.

37.     On information and belief, the Counterfeit Goods are not subject to the same level of safety testing as Plaintiffs' genuine BIO-OIL® skincare oil.

38.     Upon information and belief, the unauthorized use of the BIO-OIL® Trademarks by Defendants on the Counterfeit Goods is likely to cause consumers to mistakenly believe that the Counterfeit Goods are genuine and have been approved for use in the cosmetic industry.  The unknown chemical ingredients in Defendants' Counterfeit Goods may pose a risk to consumers, as the Counterfeit Goods may not have been subject to safety testing and may in fact contain harmful ingredients.  Any adverse consequences arising from use of the Counterfeit Goods would necessarily diminish the reputation and goodwill associated with the BIO-OIL® Trademarks.

39.     Defendants are not now, nor have they ever been, associated, affiliated or connected with, or endorsed or sanctioned by Plaintiffs.

40.     Plaintiffs have never authorized or consented in any way to the use by Defendants of the BIO-OIL® Trademarks or copies thereof.

41.     The unauthorized use of the BIO-OIL® Trademarks by Defendants on the Counterfeit Goods is likely to cause consumers, either at the point-of-sale or post-sale, to believe that such Counterfeit Goods are genuine BIO-OIL® skincare oil that emanate from either Plaintiff, or are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or are otherwise affiliated, associated, or connected with Plaintiffs.

42.     Upon information and belief, Defendants were aware that the BIO-OIL® Trademarks were famous marks owned by Geneva Labs at the time they began importing, distributing, supplying, advertising, promoting, offering for sale and/or selling the Counterfeit Goods.  Accordingly, upon further information and belief, Defendants have been engaging in the above-described unlawful activities knowingly and intentionally, and/or with reckless disregard for Plaintiffs' rights in and to the BIO-OIL® Trademarks.

43.     Upon information and belief, Defendants have willfully and maliciously engaged in their counterfeiting and infringing activities.

44.     Upon information and belief, Defendants intend to continue to import, distribute, supply, advertise, promote, offer for sale and/or sell, and/or cause to be imported, distributed, supplied, advertised, promoted, offered for sale and/or sold, the Counterfeit Goods, unless otherwise restrained by this Court.

45.     Unless Defendants' unlawful conduct is enjoined, such conduct will severely inhibit and/or destroy the ability of the BIO-OIL® Trademarks to identify Plaintiffs as the exclusive source of BIO-OIL® skincare oil bearing the BIO-OIL® Trademarks.

46.     Defendants' unlawful conduct has irreparably damaged and, unless restrained by this Court, will continue to so damage Plaintiffs, leaving Plaintiffs with no adequate remedy at law.

47.     By using counterfeits and infringements of the BIO-OIL® Trademarks on Defendants' Counterfeit Goods, Defendants are trading on Plaintiffs' goodwill and reputation, and creating the false impression that Defendants' Counterfeit Goods are genuine BIO-OIL® skincare oil.

48.     Since Plaintiffs are the only genuine source for BIO-OIL® skincare oil, given the fame of Plaintiffs' BIO-OIL® skincare oil, purchasers of the Counterfeit Goods seeing the BIO-OIL® Trademarks on the Counterfeit Goods would necessarily have believed that they were purchasing the genuine product and could not verify the legitimacy of the Counterfeit Goods.  As such, each and every sale of the Counterfeit Goods made by Defendants would have necessarily been a sale of genuine BIO-OIL® skincare oil made by Plaintiffs, which Plaintiffs could have made but for Defendants' unlawful activities, causing Plaintiffs specific lost sales and a loss of profits

from those sales.  In addition, due to the inferiority of the Counterfeit Goods, Plaintiffs will necessarily be damaged for lost future sales to purchasers of the Counterfeit Goods, and for the specific cost of contacting those who purchased the Counterfeit Goods from Defendants to specifically advise them that such goods were counterfeit and repair any damage to Plaintiffs' goodwill and reputation caused by Defendants' unlawful conduct described herein.

49.     Defendants have been unjustly enriched by illegally using and misappropriating Geneva Labs' BIO-OIL® Trademarks for Defendants' own financial gain.

50.     Defendants have disparaged Plaintiffs, the BIO-OIL® Trademarks, and Plaintiffs' BIO-OIL® skincare oil by creating a false association with Plaintiffs, their genuine BIO-OIL® skincare oil and the BIO-OIL® Trademarks.

## COUNT ONE
## (Trademark Counterfeiting – 15 U.S.C. § 1114)

51.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-50 of this Complaint as if fully set forth herein.

52.     Geneva Labs is the owner of all right, title and interest in and to the BIO-OIL® Trademarks, which are valid and subsisting.

53.     Defendants, without authorization from Plaintiffs, have used in commerce marks spurious designations that are identical to or substantially indistinguishable from the BIO-OIL® Trademarks on goods for which Geneva Labs holds U.S. trademark registrations.  Defendants have knowingly used these spurious marks for their own personal financial gain.

54.     Defendants have intentionally used these spurious designations knowing that they are counterfeit, or were willfully blind to such use, in connection with the advertisement, promotion, sale, offering for sale and distribution of the Counterfeit Goods.

55. Defendants' use of the BIO-OIL® Trademarks has caused, is intended to cause and is likely to continue to cause confusion or mistake, or to deceive the general consuming public and the trade into believing that Defendants' Counterfeit Goods are genuine or authorized products of Plaintiffs.

56. Upon information and belief, Defendants have acted with knowledge of Geneva Lab's ownership of the BIO-OIL® Trademarks, and with the deliberate intent to unfairly benefit from the goodwill represented thereby.

57. Defendants' acts as described herein constitute trademark counterfeiting and trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

58. The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

59. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful advertisement, promotion, sale and offers of sale of the Counterfeit Goods bearing counterfeits or infringements of the BIO-OIL® Trademarks.

60. Defendants' acts are both willful and malicious.

61. The willful and intentional nature of Defendants' infringement renders this an exceptional case under 15 U.S.C. § 1117(a).

62. By reason of the foregoing, Defendants are, jointly and severally, liable to Plaintiffs for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits pursuant to 15 U.S.C. § 1117(b); and (b) reasonable attorneys' fees, investigative fees and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

63.     The aforesaid acts of Defendants have also caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT TWO
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

64.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-63 of this Complaint as if fully set forth herein.

65.     Geneva Labs is the owner of all right, title and interest in and to the BIO-OIL® Trademarks, which are valid and subsisting.

66.     Defendants, without authorization from Plaintiffs, have used and are continuing to use in commerce spurious designations that are identical to or substantially indistinguishable from the BIO-OIL® Trademarks on goods for which Geneva Labs holds U.S. trademark registrations.

67.     The foregoing acts of Defendants have caused, is intended to cause and is likely to continue to cause confusion, mistake and deception among the general consuming public and the trade, as to whether Defendants' Counterfeit Goods originate from, or are affiliated with or sponsored, approved or endorsed by Plaintiffs.

68.     Upon information and belief, Defendants have acted with knowledge of Geneva Labs' ownership of the BIO-OIL® Trademarks and with deliberate intent or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

69.     Defendants' acts as described herein constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

70.     The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

71.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful advertisement, promotion, sale and offers of sale of the Counterfeit Goods bearing counterfeits or infringements of the BIO-OIL® Trademarks.

72.     The willful and intentional nature of Defendants' infringement renders this an exceptional case under 15 U.S.C. § 1117(a).

73.     By reason of the foregoing, Defendants are, jointly and severally, liable to Plaintiffs for: (a) an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits pursuant to 15 U.S.C. § 1117(b); and (b) reasonable attorneys' fees, investigative fees and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

74.     The aforesaid acts of Defendants have also caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT THREE
### (False Designation of Origin &Unfair Competition – 15 U.S.C. § 1125(a))

75.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-74 of this Complaint as if fully set forth herein.

76.     Defendants' promotion, advertising, distribution, sale and/or offering for sale of the Counterfeit Goods bearing the BIO-OIL® Trademarks is intended or is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Counterfeit Goods, or is intended, or is likely to cause such parties to believe in error that the Counterfeit Goods have been authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

77.     The foregoing acts of Defendants constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

78.     The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet

been determined.

79.     The willful and intentional nature of Defendants' acts renders this an exceptional

case under 15 U.S.C. § 1117(a).

80.     By reason of the foregoing, Defendants are, jointly and severally, liable to Plaintiffs

for: (a) an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits

pursuant to 15 U.S.C. § 1117(b); and (b) reasonable attorneys' fees, investigative fees and

prejudgment interest pursuant to 15 U.S.C. § 1117(b).

81.     The aforesaid acts of Defendants have also caused irreparable harm to Plaintiffs

and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to

Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT FOUR
## (Federal Dilution of Mark – 15 U.S.C. § 1125(c))

82.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-81 of this

Complaint as if fully set forth herein.

83.     The BIO-OIL® Trademarks are strong and distinctive marks that have been in use

for many years, and have achieved enormous and widespread public recognition.

84.     The BIO-OIL® Trademarks are famous and distinctive within the meaning of 15

U.S.C. § 1125(c)(2)(A), in that the trademarks are widely recognized by the general consuming

public of the United States as a designation of the source of Plaintiffs' BIO-OIL® skincare oil.

85.     The BIO-OIL® Trademarks became famous prior to Defendants' unlawful use of

counterfeit copies or colorable imitations thereof, as alleged herein.

86.     Defendants' unauthorized use of counterfeit copies or colorable imitations of the

BIO-OIL® Trademarks in interstate commerce, in connection with the unauthorized sale in the

United States of their Counterfeit Goods, is likely to dilute the distinctive quality of Geneva Labs' famous BIO-OIL® Trademarks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening the capacity of the BIO-OIL® Trademarks to identify and distinguish Plaintiffs exclusively as the source of BIO-OIL® skincare oil in the United States bearing the famous BIO-OIL® Trademarks and by harming the reputation and goodwill of the famous BIO-OIL® Trademarks.

87.     Defendants' unauthorized use of counterfeit copies or colorable imitations of the BIO-OIL® Trademarks in connection with the sale in the United States of the Counterfeit Goods is intended and has the effect of trading on Plaintiffs' reputation and causing dilution of the famous BIO-OIL® Trademarks.

88.     Defendants' trademark dilution as herein alleged has injured and will continue to injure Plaintiffs in that Plaintiffs have suffered and will continue to suffer damage to their reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that Defendants have achieved sales and profits as a direct and proximate result of their illegal conduct.

89.     Plaintiffs are entitled to recover from Defendants, jointly and severally, all damages sustained as a result of Defendants' actions, and all profits realized by Defendants through their unlawful use of counterfeit copies or colorable imitations of the BIO-OIL® Trademarks and in connection with Defendants' offering for sale and sale of the Counterfeit Goods.

90.     Defendants have intentionally and willfully diluted the distinctive quality of Plaintiffs' famous BIO-OIL® Trademarks in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

91.     Defendants' actions have been willful and deliberate, rendering this an exceptional case under 15 U.S.C. § 1117(a) and entitling Plaintiffs to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

92.     The aforesaid acts of Defendants have also caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs  have no adequate remedy at law.

## COUNT FIVE
## (Trademark Counterfeiting, N.J.S.A § 56:3-13.16)

93.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-92 of this Complaint as if fully set forth herein.

94.     Defendants have deliberately and intentionally used, without Plaintiffs' consent, reproductions, counterfeits, copies, or colorable imitations of the BIO-OIL® Trademarks in connection with the sale, distribution, offering for sale or advertising of the Counterfeit Goods, which are likely to cause confusion, mistake or to deceive consumers, the public or the trade as to their source or origin.

95.     The foregoing acts of Defendants constitute trademark counterfeiting in violation of N.J.S.A. § 56:3-13.16.

96.     The foregoing acts of Defendants constitute unfair competition of the common law of the various states, including the State of New Jersey.

97.     The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

98.     The aforesaid acts of Defendants have caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT SIX**
**(New Jersey Unfair Competition – N.J. Stat. Ann. § 56:4-1)**

99.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-98 of this Complaint as if fully set forth herein.

100.     The foregoing acts of Defendants constitute unfair competition under the statutory law of the State of New Jersey, N.J. Stat. Ann. § 56:4-1.

101.     The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

102.     Defendants are jointly and severally liable to Plaintiffs for all damages, whether direct or indirect, for the misappropriation of Plaintiffs' BIO-OIL® Trademarks, reputation and goodwill, which damages are subject to trebling pursuant to N.J. Stat. Ann. § 56.4-2.

103.     The aforesaid acts of Defendants have caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT SEVEN**
**(Common Law Unfair Competition)**

104.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-103 of this Complaint as if fully set forth herein.

105.     The foregoing acts of Defendants constitute unfair competition of the common law of the various states, including the State of New Jersey.

106.     The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

107.    The aforesaid acts of Defendants have caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT EIGHT
### (Common Law Trademark Infringement)

108.    Plaintiffs repeats and realleges the allegations set forth in Paragraphs 1-107 of this Complaint as if fully set forth herein.

109.    Geneva Labs owns all right, title, and interest in and to the BIO-OIL® Trademarks, including all common law rights in such marks.

110.    Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the BIO-OIL® Trademarks.

111.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Counterfeit Goods originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs.

112.    Upon information and belief, Defendants have acted with knowledge of Geneva Labs' ownership of the BIO-OIL® Trademarks and with deliberative intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

113.    Defendants' acts constitute trademark infringement in violation of the common law of the State of New Jersey.

114.    The aforesaid acts of Defendants have injured Plaintiffs in an amount that has yet been determined.

115.    The aforesaid acts of Defendants have also caused irreparable harm to Plaintiffs and, unless enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT NINE
### (Unjust Enrichment)

116.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-115 of this Complaint as if fully set forth herein.

117.    Upon information and belief, Defendants have made and will continue to make profits and gains to which they are not in law or equity entitled.

118.    By selling the Counterfeit Goods bearing Plaintiffs valuable BIO-OIL® Trademarks, Defendants have been unjustly enriched at Plaintiffs' expense in violation of the common law of the State of New Jersey.

## COUNT TEN
### (Tortious Conspiracy)

119.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-118 of this Complaint as if fully set forth herein.

120.    The actions of Defendants as alleged above were done deliberately and intentionally.

121.    The actions of Defendants were performed, in concert, pursuant to a real agreement or in confederation with a common design to perpetrate one or more torts for an unlawful purpose or by an unlawful means.

122.    Each and every Defendant is equally and vicariously liable to Plaintiffs for its damages proximately caused thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor on each and every count set forth above against Defendants jointly and severally, and award Plaintiffs relief including but not limited to the following relief:

A.      Entering judgment that Defendants, jointly and severally, have: (i) willfully counterfeited, infringed and diluted Plaintiffs' registered BIO-OIL® Trademarks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (ii) willfully trafficked in counterfeit marks in violation of N.J.S.A. § 56:3-13.16; (iii) engaged in unfair competition in violation of N.J.S.A. § 56:4-1 and New Jersey common law; (iv) willfully infringed the BIO-OIL® Trademarks in violation of New Jersey common law; and (v) been unjustly enriched in violation of New Jersey common law;

B.      Entering a permanent injunction enjoining and restraining each Defendant, and their related companies, officers, directors, agents, principals, servants, employees, attorneys, successors and assigns, and all persons acting in privity or acting in concert or participation with each or any of them, from:

(i)      Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, and/or selling Counterfeit Goods and/or any other skincare products that bear the BIO-OIL® Trademarks, or any other marks confusingly similar thereto,

(ii)      Further infringing Geneva Labs' registered BIO-OIL® Trademarks or competing unfairly with Plaintiffs by manufacturing, importing, distributing, selling, marketing, offering for sale, advertising or promoting skincare products bearing any reproduction, counterfeit, copy or colorable imitation of the BIO-OIL® Trademarks;

(iii)    Using any false designation or representation of origin in connection with the offering for sale or sale of goods, or making any description or representation likely to cause persons to believe that Defendants' goods are, in any way, affiliated, associated, authorized, sponsored, endorsed, or otherwise connected with Plaintiffs;

(iv)    Affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being genuine BIO-OIL® skincare oil and from offering such goods in commerce;

(v)    Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of any of the BIO-OIL® Trademarks;

(vi)    Any other conduct that is likely to cause confusion, cause mistake or deceive as to the source, affiliation, connection, or association of Defendants' goods with Plaintiffs; and

(vii)    Engaging in any other activity, including without limitation, forming of any entity or using any other device for the purpose, which would have the effect, of circumventing, evading, avoiding or otherwise violating the prohibitions of subsections B(i) through B(vi) hereof;

C.    Ordering Defendants to file with the Court and serve on Plaintiffs, within thirty (30) days after issuance of such injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have each complied with the injunction;

D.    Directing such other and further relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product

at issue in this action that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants has been authorized by Plaintiffs, or is related in any way with Plaintiffs and/or their products;

E.      Awarding Plaintiffs statutory damages of $2,000,000 per trademark counterfeited and infringed in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117), or alternatively, ordering Defendants to account to and pay to Plaintiffs all profits realized by their wrongful acts, and also awarding Plaintiffs their actual damages, and directing that such profits or actual damages be trebled in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) and N.J.S.A. §§ 56:3-13.16(d) and 56:4-2;

F.      Awarding Plaintiffs punitive damages to which they are entitled under applicable federal or state laws;

G.      Awarding Plaintiffs their costs, attorneys' fees, investigatory fees and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117) and N.J.S.A. § 56:3-13.16(d);

H.      Awarding Plaintiffs pre-judgment interest on any monetary award made part of the judgment against Defendants;

I.      Ordering Defendants, at their expense, to deliver to Plaintiffs for destruction all Counterfeit Goods, advertisements, promotional materials and packaging, and means for manufacture or production of the foregoing, in any of the Defendants' possession, custody or control bearing any of the registered BIO-OIL® Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof; and

J.      Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable thereto.

**WEITZMAN LAW OFFICES, LLC**

Dated:  December 14, 2018          By:   /s  Kenneth S. Weitzman                      
                                                        Kenneth S. Weitzman (Bar No. 021451992)
                                                        425 Eagle Rock Avenue, Suite 102
                                                        Roseland, New Jersey 07068
                                                        Tel. (973) 403-9940
                                                        Email: kweitzman@weitzmanip.com

                                                        OF COUNSEL:

                                                        Michael J. Brown (Bar No. 049391994)
                                                        WEITZMAN LAW OFFICES, LLC
                                                        425 Eagle Rock Avenue, Suite 102
                                                        Roseland, New Jersey 07068
                                                        Tel.: (973) 403-9940
                                                        Fax: (973)-403-9944

                                                        *Attorneys for Plaintiffs Geneva Laboratories Limited and Union-Swiss (Proprietary) Limited*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned counsel for Plaintiffs hereby certifies that the matter in controversy in this litigation is not, to the best of Plaintiffs' knowledge and belief, the subject of any other pending civil action in any court, or of any pending arbitration or administrative proceeding.

**WEITZMAN LAW OFFICES, LLC**

Dated:  December 14, 2018          By:   /s  Kenneth S. Weitzman                      
                                                        Kenneth S. Weitzman (Bar No. 021451992)
                                                        425 Eagle Rock Avenue, Suite 102
                                                        Roseland, New Jersey 07068
                                                        Tel. (973) 403-9940
                                                        Email: kweitzman@weitzmanip.com

                                                        *Attorneys for Plaintiffs Geneva Laboratories Limited and Union-Swiss (Proprietary) Limited*

## RULE 201.1 CERTIFICATION

Pursuant to L. Civ. R. 201.1, the undersigned counsel for Plaintiffs hereby certifies that, in addition to monetary damages, Plaintiffs seek injunctive and other equitable relief, and therefore this action is not appropriate for compulsory arbitration.

**WEITZMAN LAW OFFICES, LLC**

Dated:  December 14, 2018      By:  _/s  Kenneth S. Weitzman_____
                                     Kenneth S. Weitzman (Bar No. 021451992)
                                       425 Eagle Rock Avenue, Suite 102
                                       Roseland, New Jersey 07068
                                       Tel. (973) 403-9940
                                       Email: kweitzman@weitzmanip.com

                                       *Attorneys for Plaintiffs Geneva Laboratories*
                                       *Limited and Union-Swiss (Proprietary) Limited*